## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JEFFREY STUART | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO. |
| v. | : | _____ |
| | : | |
| FULFILLMENT STRATEGIES | : | |
| INTERNATIONAL, INC. | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## COMPLAINT

Plaintiff Jeffrey Stuart files his Complaint against Defendant Fulfillment Strategies International, Inc., ("FSI," the "Company," or "Defendant").

## NATURE OF THE ACTION

1.

This is an action for interference and retaliation under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. ("FMLA"). Plaintiff also brings a breach of contract action under Georgia law.

## PARTIES

### 2.

Plaintiff Jeffrey Stuart is a U.S. citizen and resident of Fulton County in the State of Georgia.

### 3.

Defendant Fulfillment Strategies International, Inc. is a corporation organized under the laws of Georgia, with its principal offices in Douglas County at: 875 Douglas Hill Rd, Lithia Springs, Georgia, 30122. It is subject to an action under the FMLA and can be served with summons and complaint upon its Registered Agent and Chief Executive Officer, Forrest Marbutt, at its principal office address listed above.

## JURISDICTION AND VENUE

### 4.

The claims brought in this lawsuit present federal questions and jurisdiction in this Court are proper under 28 U.S.C. §§'s 1331, 1337, and 1343. This court may exercise supplemental jurisdiction over Plaintiff's breach of contract claims under 28 U.S.C. § 1367.

5.

Venue of this suit is proper in the Northern District of Georgia, Atlanta Division under 28 U.S.C. § 1391. The alleged unlawful acts against Plaintiff occurred in this judicial district and division. In addition, Defendants operate in this judicial district and division.

6.

Plaintiff filed an EEOC charge against Defendant with the Equal Employment Opportunity Commission on May 3, 2022 alleging violations of the Americans Disabilities Act of 1990, as amended, 42 U.S.C. §§'s 12101 *et. seq*, (ADA). The EEOC is still investigating Plaintiff's Charge and has not issued a Notice of Right to Sue yet. Plaintiff will amend his Complaint to add his ADA claims if the EEOC issues a Notice of Right to Sue.

**FACTUAL ALLEGATIONS**

7.

On October 21, 2019, FSI employed Stuart as Director of Operations.

8.

As consideration for his continued employment, Stuart and FSI later entered into an Executive Employment Agreement that provides that if he is terminated without cause, FSI must provide him six months notice and

either allow him to work for six months with salary and benefits, or provide him with six months severance in lieu of working as a severance.

9.

Stuart suffers from and has been diagnosed with several mental health disorders that substantially limit him in the major life activities of learning, thinking, concentrating, interacting with others, caring for himself, communicating, performing manual tasks, sleeping, working, and handling major life activities.

10.

In addition, Stuart has been diagnosed with and suffers from impairments that substantially limit his brain and neurological functions.

11.

Stuart's disabilities and impairments also constitute serious health conditions under the FMLA for which he receives continuing treatment.

12.

Sometime in September 2020, Stuart reported to Toni Merton, Director of Human Resources, that he was suffering from symptoms and impairments related to his disabilities and serious health condition.

13.

During this conversation, Merton witnessed Stuart crying.

14.

Merton referred Stuart to the Employee Assistance Program.

15.

While Stuart was in General Manager Forrest Marbutt's office in September 2020, he cried in front of him.

16.

Stuart also cried in front of Linda Williamson, Director, while she was eating lunch in her office.

17.

Stuart also cried in front of the Inventory Control Manager on multiple occasions in August and September 2020.

18.

Sometime in October 2020, Stuart sought medical treatment due to experiencing exacerbated symptoms caused by his disabilities and serious medical conditions.

19.

A doctor with his medical treatment provider informed Stuart that he should take off from work from October 8, 2020 through October 14, 2020.

20.

When Stuart informed Marbutt of his doctor's visit and his need for five days of medical leave, Marbutt shook his head angrily and walked away.

21.

For the rest of the day, Marbutt followed Stuart around the workplace.

22.

Later that day, Williamson started a conflict with Stuart.

23.

Marbutt walked up to observe the conflict.

24.

Despite Marbutt's presence, Williamson still communicated in a loud voice.

25.

Marbutt took no steps to stop Williamson from talking so loud.

26.

To avoid further conflict, Stuart walked away from Williamson.

27.

Marbutt followed Stuart and attempted to continue the argument.

28.

Because of Marbutt's reaction to Stuart's leave request, he did not take the five days of leave recommended as treatment by the doctor.

29.

FSI did not provide Stuart with notice of his FMLA rights.

30.

Two weeks later, Marbutt and Toni Merton, Director of Human Resources, met with Stuart to inform him that his behavior with Williamson was inappropriate.

31.

Stuart replied that he had done nothing wrong and sought to avoid the conflict started by the co-worker by walking away.

32.

Neither Marbutt nor Merton counseled or disciplined Williamson for her behavior.

33.

On or about October 21, 2020, Stuart tested positive for Covid-19 and
isolated to work from home.

34.

Stuart returned to work onsite on Wednesday, November 4, 2020.

35.

On the day of his return, Stuart informed Marbutt that he was having
some serious health issues and had a doctor's appointment the next day.

36.

On Thursday, November 5, 2020, Stuart met with Marbutt and
requested FMLA leave due to his serious medical condition resulting from his
disability.

37.

As part of this request, Stuart informed Marbutt that his doctor was
drafting a note to support his leave request.

38.

Marbutt replied that FSI hired Stuart to be present at work at all times
to manage the business with one of its customers, Tempur-Pedic.

39.

On the following morning, Friday, November 6, 2020, Stuart sent an email to Merton seeking to take sick leave for the day. However, Stuart still made and accepted phone calls that day.

40.

Marbutt and Merton called Stuart later in the day and stated that they were not happy with him not coming to work onsite.

41.

Marbutt and Merton asked if he could still take work calls on behalf of the Tempur-Pedic account.

42.

Rather than provide him with the notice required under the FMLA or grant him leave, Marbutt and Merton called Stuart back again and terminated him.

43.

Marbutt and Merton alleged that the reason for termination was that Stuart did not get along with other employees.

44.

During that conversation, Marbutt and Merton stated that they would pay Stuart a lump sum severance of $85,000.

45.

FSI provided Stuart with a Georgia Department of Labor Separation Notice, which Merton signed.

46.

In the reason for separation section, FSI described the circumstances of separation as:

> Misconduct/inability to work well with others. Several documented incidents with employees of all levels. Per the employment agreement between Mr. Stuart and FSI, either party could terminate with or without cause and FSI would pay severance equal to his salary for 6 months and benefits.

47.

In section 5 of the Separation Notice, the Company noted that it was paying Severance Pay in the amount of $85,000 for the period from November 27, 2020 to May 7, 2021 and would begin to pay that amount biweekly starting November 27, 2020.

48.

Stuart called Marbutt on Saturday, November 7, 2020 protesting that the Separation Notice stated that he was fired for misconduct because he did nothing wrong.

49.

Marbutt agreed that he had not been fired for misconduct and agreed to revise the Separation Notice.

50.

FSI sent a revised Separation Notice signed by Merton that provided the Reason for Separation as: "Involuntary Termination."

51.

Stuart had further communications with Marbutt and Merton in which he demanded severance pay for health insurance benefits.

52.

Marbutt and Merton agreed to pay a sum for Stuart to pay his COBRA health insurance amount, but stated that FSI would have to pay the $85,000 in biweekly installments rather than a lump sum.

53.

Rather than pay the amount under the Executive Employment Agreement, FSI sent Stuart a Separation Agreement & Release in which it required him to take several actions, release all claims, and agree to restrictive covenants and other terms in order to receive the severance amounts.

54.

As Stuart suffered from and was being treated for mental health disabilities, his termination further exacerbated his condition and complicated his treatment.

55.

FSI's discriminatory and retaliatory acts have caused Stuart emotional distress and financial hardship.

## COUNT ONE
## INTERFERENCE WITH FMLA RIGHTS

56.

As described in Paragraphs 9 through 12, Plaintiff suffers from mental health impairments that substantially limited him in several major life

activities and constitute serious medical conditions for which he has received continuing treatment.

57.

Defendant is an employer as defined by the FMLA who employed more than 50 or more employees within a 75-mile radius.

58.

Plaintiff was eligible for FMLA leave because he suffered from a serious medical condition and worked full-time for Defendant for over a year.

59.

Plaintiff notified his supervisor twice that he was requesting leave for treatment of a serious health condition.

60.

Despite these two requests, Defendant never provided Plaintiff with notice of his FMLA rights or even acknowledged his right to FMLA leave.

61.

Defendant did not grant Plaintiff any FMLA leave.

62.

Instead, Defendant terminated Plaintiff to interfere with his right to take FMLA leave.

63.

As a result of Defendant's interference with Plaintiff's FMLA right to take leave, he is entitled to recover the relief requested below.

## COUNT TWO
## RETALIATION UNDER THE FMLA

64.

By seeking leave for his serious medical condition, Plaintiff engaged in protected activity under the FMLA.

65.

Defendant's discharge of Plaintiff was motivated by an intent to retaliate against him for seeking leave for his serious medical condition.

66.

Under his Executive Employment Agreement, Defendant owed Plaintiff a severance amount because it fired him without cause as defined by the agreement.

67.

The Executive Employment Agreement did not conditioned the receipt of severance pay on Plaintiff releasing any claims or entering into new terms.

68.

By insisting that Plaintiff release any FMLA claims to obtain this severance amount, Defendant retaliated against him.

69.

Defendant's failure to treat Plaintiff's medical leave requests as him exercising his FMLA rights was willful.

70.

As a result of Defendants' retaliation against Plaintiff for seeking FMLA leave, he is entitled to recover the relief requested below.

**COUNT THREE**
**BREACH OF CONTRACT UNDER GEORGIA LAW**

71.

Stuart and FSI entered into an Executive Employment Agreement drafted by FSI.

72.

Section 5(b) of the Executive Employment Agreement provided that if FSI terminated Stuart without cause, it must provide him six months notice and either allow him to work for six months with salary and benefits, or provide him with six months severance in lieu of working six months.

73.

Nothing in the Executive Employment Agreement conditioned the receipt of this severance pay on the execution of any release or any other agreement.

74.

The Cause definition in Section 5(c) of the Executive Employment Agreement provides that:

> Termination by the Company of the Employee for "cause" shall include but not be limited to termination based on any of the following grounds (a) fraud, misappropriation, embezzlement or acts of similar dishonesty; (b) conviction of a felony involving moral turpitude; (c) illegal use of drugs or excessive use of alcohol in the workplace; (d) intentional and willful misconduct that may subject the Company to criminal or civil liability; (e) breach of the Employee's duty of loyalty, including the diversion or usurpation of corporate opportunities properly belonging to the Company; (f) willful disregard of Company policies and procedures; (g) breach of any of the material terms of this Agreement; and (h) insubordination or deliberate refusal to follow the instructions of the President and/or the Vice President and General Manager of FSI Company.

75.

Section 5(d) of the Executive Employment Agreement provides:

> Termination By Death or Disability. The Employee's employment and rights to compensation under this Employment Agreement shall terminate if the Employee is unable to perform the duties of his position due to death or disability lasting more than 90 days, and the Employee's heirs, beneficiaries, successors, or assigns shall not be entitled to any of the compensation or benefits to

16

which Employee is entitled under this Agreement, except: (a) to the extent specifically provided in this Employment Agreement (b) to the extent required by law; or (c) to the extent that such benefit plans or policies under which Employee is covered provide a benefit to the Employee's heirs, beneficiaries, successors, or assigns.

76.

Stuart never sought leave for a disability lasting more than 90 days.

77.

When Marbutt terminated Stuart, the only reason he gave was "failure to get along with employees at all levels."

78.

This reason does not meet any of the definitions of cause in the Executive Employment Agreement.

79.

Marbutt and Merton have verbally admitted that FSI owed Stuart the severance payment due under the Executive Employment Agreement.

80.

In two Separation Notices signed by Merton, FSI certified to the Georgia Department of Labor that it owes Stuart the severance payment under the Executive Employment Agreement.

81.

Instead of paying the severance amount, FSI demanded that Stuart sign a Separation Agreement & Release that required him to release any claim and to acknowledge that he had been granted all FMLA leave to which he was entitled.

82.

In addition, the Separation Agreement & Release provided that Stuart must keep all the circumstances leading up to the Agreement confidential.

83.

The Separation Agreement & Release also required Stuart to agree to not sue on any released claim and not accept any compensation for any monetary damages for any such claim.

84.

The Separation Agreement & Release also required that Stuart agree to several restrictive covenants.

85.

On November 16, 2020, Stuart emailed Merton asking her to point him to any language in the Executive Employment Agreement that provided that

he would have to sign a release of claims or any other type of document to receive the severance payment due under that Agreement.

86.

In a November 22, 2020 email reply from Merton, she asserted that Stuart was not due the severance in the Executive Employment Agreement because the termination is "involuntary."

87.

Whether a termination is involuntary was not of any consequence to the severance due under the Executive Employment Agreement and did not meet any of the limited cause definitions.

88.

Merton's statement also contradicted her certification that he was due this severance amount to the Georgia Department of Labor on the Separation Notices she signed as an agent for FSI.

89.

In a November 25, 2020 letter to Marbutt, Plaintiff's counsel demanded that FSI pay Stuart the amounts due under the severance clause regardless of whether he signed any release on other claims.

90.

FSI has never paid the severance amount.

91.

Defendant breached its obligation under the Executive Employment Agreement to pay Stuart the severance amount because it did not terminate him for cause as defined by that agreement.

92.

As a result of Defendant's breach of contract, Plaintiff is entitled to recover the relief requested below.

**COUNT FOUR**
**ATTORNEYS' FEES UNDER O.C.G.A. § 13-6-11**

93.

By failing to pay Stuart the six months severance due under the Executive Employment Agreement, FSI has acted in bad faith, been stubbornly litigious, or caused Plaintiff unnecessary trouble and expense.

94.

As a result of Defendant's acts, Plaintiff is entitled to recover the relief requested below.

WHEREFORE, Plaintiff prays:

a.      That Summons issue requiring Defendant to answer the Complaint within the time provided by law;

b.      That Plaintiff be awarded a declaratory judgment that Defendant violated the FMLA;

c.      That Plaintiff be awarded a declaratory judgment that Defendant breached its Executive Employment Agreement with Plaintiff;

d.      That Plaintiff recover from Defendant back pay and benefits with pre-judgment interest;

e.      That Plaintiff recover liquidated damages against Defendant;

f.      That Plaintiff recover the severance pay due under the Executive Employment Agreement;

g.      That the Court order Defendant to reinstate Plaintiff, or in lieu of reinstatement, pay him front pay and benefits;

h.      That Plaintiff recover attorney's fees and costs of litigation under the FMLA and other applicable federal or state law;

i.      That the Court award Plaintiff any other or further relief as it deems necessary and proper, or equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

Respectfully submitted this 3rd day of November, 2022.

T. Robert Reid, LLC

<u>s/ Tilden Robert Reid, II</u>
T. Robert Reid
Ga. Bar No. 600138

1030 Woodstock Road
Suite 3112
Roswell, Georgia  30075
Telephone (678) 743-1064
Facsimile (404) 549-4136
robreidattorney@gmail.com

Attorney for Plaintiff